UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

ROCHEL STERN on behalf of herself and
all other similarly situated consumers

                          Plaintiff,

    -against-

GC SERVICES LIMITED PARTNERSHIP

                          Defendant.
_____

## CLASS ACTION COMPLAINT

### INTRODUCTION

1. Plaintiff, Rochel Stern, brings this action on behalf of herself and all others similarly situated, by way of this Class Action Complaint for the illegal practices of Defendant, GC Services Limited Partnership who, inter alia, used false, deceptive, and misleading practices, and other illegal practices, in connection with its attempts to collect an alleged debt from the Plaintiff and others.

2. The Plaintiff alleges that Defendant's collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").

### PARTIES

3. At all times relevant to this lawsuit, Plaintiff was a citizen of the State of New York who resides within this District.

4. Plaintiff is a consumer as that term is defined by 15 U.S.C. § 1692(a)(3) of the FDCPA.

5. The alleged debt that Defendant sought to collect from the Plaintiff involves a consumer debt.

6. At all times relevant to this lawsuit, Defendant's principal place of business was located within Houston, Texas.

7. Defendant is regularly engaged upon, for profit, in the collection of allegedly owed consumer debts.

8. Defendant is a "debt collector" as specifically defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

## JURISDICTION & VENUE

9. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

10. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims of Plaintiff occurred within this federal judicial district.

## FACTS PARTICULAR TO ROCHEL STERN

11. Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiff.

12. Within the one year immediately preceding the filing of this complaint, the Defendant attempted to contact the Plaintiff on multiple occasions via telephone and left numerous messages in an attempt to collect the alleged obligation.

13. The following is an example of one such message that Plaintiff received on or about February 2, 2016:

    Name is Daniel Reyna, callback number is 18008466406, ext. 5706, calling from GC Services.

14. At the time Plaintiff received the said messages, she did not know the identity of the callers.

15. At the time Plaintiff received the said messages, she did not know that the call concerned the collection of a debt.

16. Each of the messages is a "communication" as defined by 15 U.S.C. § 1692a(2).[1]

17. Each of the above messages uniformly failed to identify the callers as debt collectors attempting to collect a debt.

18. The messages left by Defendant were deceptive and harassing per se in that they secreted the identity of the Defendant in violation of 15 U.S.C. § 1692d(6).

19. Upon information and belief, it is the regular practice of the Defendant to leave messages to be conveyed to 'consumers' which do not meaningfully identify themselves, and/or do not identify themselves as a debt collector.

20. The only way for Plaintiff and/or any least sophisticated consumer to obtain the identity of the caller leaving the messages, and to ascertain the purpose underlying the messages, was to place a return call to the telephone number provided in the messages and speak with a debt collector employed by GC Services Limited Partnership, and to provide the debt collector with personal information.

21. The Defendant intended that the messages have the effect of causing Plaintiff, and other least sophisticated consumers, to place return calls to the telephone number provided in the messages and to speak with their debt collectors, and then provide those debt collectors with their personal information, as the sole means of obtaining the identity of the caller leaving the messages, and to ascertain the purpose underlying the messages.

22. Scores of federal court decisions - including the 2nd Circuit Court of Appeals and all the District Courts that have considered the issue within the State of New York - (17 decisions to date) uniformly hold that the FDCPA requires debt collectors to provide meaningful identification of itself in messages left for consumers, such as the said messages, by accurately stating the name of the debt collection company and stating the

---

[1] Dauval v. MRS BPO, L.L.C., 2013 U.S. Dist. LEXIS 189109, 25 Fla. L. Weekly Fed. D 47 (M.D. Fla. June 27, 2013); Foti v. NCO Fin. Sys., 424 F.Supp.2d 643, 655–56 (S.D.N.Y.2006) (holding that a message with enough information to entice a return call being left with a third party or on a voice mail is a "communication" under the FDCPA).

3

nature and/or purpose of the call.[2]

23. At all times relevant to this action, GC Services Limited Partnership was aware of the substantial weight of legal authority requiring it to provide meaningful identification of itself in messages left for consumers, such as the said messages, by accurately stating the nature and/or purpose of the call.[3]

24. At all times relevant to this action, GC Services Limited Partnership willfully, deliberately, and intentionally chose not to provide meaningful identification of itself in the messages it left for consumers, such as the said messages, by accurately stating the nature and/or purpose of the call.

25. The Defendant's act of leaving the said messages for Plaintiff is conduct the natural consequences of which is to harass, oppress, or abuse a person in connection with the collection of a debt and is in violation of the FDCPA.

26. The Defendant's act of leaving the said messages for Plaintiff constitutes the use of a false, deceptive, or misleading representation or means in connection with the collection of a debt and is in violation of the FDCPA.

27. The FDCPA secures a consumer's right to have a debt collector cease further communications with the consumer. By failing to meaningfully identify itself, disclose

---

[2] Leyse v. Corporate Collection Servs., (2006 U.S. Dist. LEXIS 67719 (S.D.N.Y. Sept. 18, 2006)) (The court followed *Foti,* 424 F. Supp. 2d at 655-56 and *West v. Nationwide Credit,* 998 F. Supp. 642, 644 (W.D.N.C. 1998) in finding that a phone call to a debtor's neighbor that the defendant had a "very important" matter to address was "regarding a debt" because the content of the phone call was "with respect to" the Defendant's efforts to collect on plaintiff's alleged arrearage and since a phone message that "advised the debtor that the matter required immediate attention, and provided a specific number to call to discuss the matter" was a communication under the FDCPA "given that the obvious purpose of the message was to provide the debtor with enough information to entice a return call. The court noted "Were this Court to determine that [the debt collectors] Messages did not constitute communications "regarding [Plaintiff's] debt", the Court would be creating an exception to swallow the rule. Under such an exception, debt collectors would be able to abuse and harass consumers with phone calls and other forms of correspondence so long as there is no express mention of the consumers' debts. The court also found: **"A message left by a debt collector which does not state that it pertains to a financial matter could reasonably pertain to a host of issues - including family or medical matters - which may be viewed by a consumer as much more pressing, than a debt owed. The apparent purpose of these messages is to be vague enough to provoke the recipient to return the calls in haste. Leaving a message that deceptively entices a consumer to communicate with a debt collector when he is caught off guard is precisely the kind of abuse the FDCPA intended to prevent."**) (emphasis added)

[3] Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1171 (9th Cir. 2006) ("[B]ecause the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors repeat players likely to be acquainted with the legal standards governing their industry to bear the brunt of the risk."); Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996) ("As the Supreme Court has held in the general context of consumer protection—of which the [FDCPA] is a part—'it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'") (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393, 85 S. Ct. 1035, 13 L. Ed. 2d 904 (1965)).

the purpose of its call and state that GC Services Limited Partnership is a debt collector in a manner understandable to the least sophisticated consumer, the Defendant has engaged in conduct designed to deprive consumers of their right to have a debt collector cease further communications.

28. It is Defendant's policy and practice to leave messages for consumers with third parties, such as the above said messages, that violate the FDCPA by, inter alia:

   (a) Failing to provide meaningful disclosure of GC Services Limited Partnership's identity;

   (b) Failing to disclose that the call is from a debt collector; and

   (c) Failing to disclose the purpose or nature of the communication, i.e. an attempt to collect a debt.

29. Upon information and belief, such messages, as alleged in this complaint, number at least in the hundreds.

30. Upon information and belief, the purpose of these messages is to be vague enough to provoke the recipient to return the calls in haste. A message left by a debt collector which does not state that it pertains to collection of a debt could reasonably pertain to a host of issues - including family or medical matters – which may be viewed by a consumer as much more pressing, than a debt owed. Leaving a message that deceptively entices a consumer to communicate with a debt collector when he is caught off guard is precisely the kind of abuse the FDCPA intended to prevent.

31. A message leaving any information concerning a debt is a "communication." 15 U.S.C. § 1692a(2). "Any information" is construed broadly in favor of consumers and includes a

callback number or a reference number.[4]

32. It is a communication whether it is from a conversation directly between a consumer and a debt collector or indirectly, such as by a message left on a telephone answering device, or with a third party.[5]

33. Defendant GC Services Limited Partnership, failed to provide Plaintiff with the notices required by 15 U.S.C. § 1692e(11), namely, by failing to advise Plaintiff that the communication was from a debt collector or that the Defendant was attempting to collect a debt.[6]

34. Defendant has engaged in a pattern of leaving messages without disclosing that the communication is from a debt collector.

35. The said telephone messages are in violation of 15 U.S.C. §§ 1692d, 1692d(6), 1692e(10) and 1692e(11) for failing to indicate that the messages were from a debt collector which constitutes a deceptive practice.

36. On or about June 15, 2016, Defendant GC Services Limited Partnership sent the Plaintiff a collection letter.

37. The said letter was an effort to collect on a consumer debt.

38. Said letter states in pertinent part as follows: "Citibank, N.A. will report any discharge of indebtedness as required by the Internal Revenue Code and corresponding IRS regulations."

39. The Defendant's language is deceptive and misleading and violated the FDCPA.

---

[4] Edwards v. Niagara Credit Solutions, Inc., 586 F. Supp. 2d 1346 (N.D. Ga. 2008) aff'd by Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 2009 U.S. App. LEXIS 22500, 22 Fla. L. Weekly Fed. C 179 (11th Cir. Ga. 2009); Stinson v. Asset Acceptance, LLC, 2006 U.S. Dist. LEXIS 42266, *7 (E.D. Va. June 12, 2006).

[5] West v. Nationwide Credit, Inc., 998 F. Supp. 642, 643 (W.D. N.C. 1998); Foti v. NCO Financial Systems, Inc., 424 F.Supp.2d 643 (S.D.N.Y. 2006) (infra); Wideman v. Monterey Fin. Srvs., Inc., 2009 U.S. Dist. LEXIS 38824 (W.D.Pa May 7, 2009); Belin v. Litton Loan Servicing, LP, 2006 U.S. Dist. LEXIS 47953, 2006 WL 1992410, 5 (M.D.Fla., 2006).

[6] Sclafani v. BC Servs., Inc., No. 10-61360-CIV, 2010 U.S. Dist. LEXIS 115330, 2010 WL 4116471, at *3 (S.D. Fla. Oct. 18, 2010) ("If [the defendant] could not leave voice messages that simultaneously complied with the multiple applicable provisions of FDCPA, it should not have left the offending voice messages.")

40. Under 26 C.F.R. §1.6050P-1(d)(2) and (3), only the discharge of principal need be reported:

> (2) Interest. The discharge of an amount of indebtedness that is interest **is not required to be reported** under this section.
>
> (3) Non-principal amounts in lending transactions. In the case of a lending transaction, the discharge of an amount other than stated principal **is not required to be reported** under this section. For this purpose, a lending transaction is any transaction in which a lender loans money to, or makes advances on behalf of, a borrower (including revolving credits and lines of credit).

41. It is highly improbable for one who is in debt to have income as a result of settling a debt, as that person is more likely to be insolvent; so such a discharge would not be considered as income.

42. A collection notice is deceptive when it reasonably can be read to have two or more different meanings, one of which is inaccurate.[7]

43. The language in the letter that states "Citibank, N.A. will report any discharge of indebtedness as required by the Internal Revenue Code and corresponding IRS regulations" could reasonably be understood by the least sophisticated consumer to mean that IRS regulations require that the client, in all circumstances, report forgiveness of debt on a Form 1099-C.

44. The words "Citibank, N.A. will report any discharge of indebtedness as required by the Internal Revenue Code and corresponding IRS regulations" is reasonably read to mean that the creditor will always report forgiveness of debt.

45. The least sophisticated consumer would understand this statement to mean that the creditor is required by IRS regulations to report forgiveness of debt.

---

[7] Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 25 (2d Cir. 1989) (Because the collection notice was reasonably susceptible to an inaccurate reading, it was deceptive within the meaning of the Act.); Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993) (Collection notices are deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate.); Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. N.Y. 1996) (A collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate. The fact that the notice's terminology was vague or uncertain will not prevent it from being held deceptive under § 1692e(10) of the Act.)

7

46. Although the Defendant had no duty to disclose any potential tax ramifications,[8] when Defendant chooses to give <u>tax</u> disclosures, it must do so in a way that it will not mislead the least sophisticated consumer as to his or her tax consequences.

47. Current case law has made clear, that if debt collectors are providing tax advice with regards to the reporting of forgiveness of debt, they cannot provide vague, incomplete and misleading disclosures that leaves out the essential element that the reporting of forgiveness of a debt happens only if the **principal** forgiven exceeds $600, and that reporting of forgiveness of a debt would not happen even if the amount is greater than $600, if the $600 or greater amount forgiven contained interest forgiveness so long as the principal was less than $600.

48. The statement "Citibank, N.A. will report any discharge of indebtedness as required by the Internal Revenue Code and corresponding IRS regulations" is ambiguous, yet the vagueness and uncertainty does not erase the fundamental mischief and deception that the statement intends to cause to the consumer. A consumer reading this statement will be led to believe that if a settlement erases any amount of the debt, then the creditor is required to report the forgiveness of debt to the IRS, per the IRS regulations (creating by fear of the IRS another incentive for the consumer to pay the debt without erasing any amount through settlement). However, this statement is inherently deceptive and misleading, by giving erroneous and incomplete tax information - because in actual fact and according to IRS regulations, the creditor "**will not**" be required to report to the IRS report forgiveness of debt less than $600, nor would the creditor be required to report an amount greater than $600 in forgiveness if the amount contained interest.

49. If the creditor wishes to legitimately give tax advice in a sincere manner, one that does

---

[8] <u>Altman v. J.C. Christensen & Assocs., 786 F.3d 191, 194, 2015 U.S. App. LEXIS 7980, *7 (2d Cir. N.Y. 2015)</u> "[T]he FDCPA does not require a debt collector to make any affirmative disclosures of potential tax consequences when collecting a debt.")

8

not mislead the consumer, then that creditor should specify and make clear to the least sophisticated consumer that only certain amounts require reporting, and that this applies only to principle and not to interest forgiveness.

50. The creditor should also specify what amounts are principle and what part of it is interest, in the amounts owed. Any tax advice that does not specify the tax consequences as it applies to the consumer's circumstances is nothing more than a ploy to elicit a more substantial payment from the consumer than the consumer would have paid, had he or she understood the tax reporting consequences.

51. The use of the words "Citibank, N.A. will report any discharge of indebtedness as required by the Internal Revenue Code and corresponding IRS regulations" is an attempt by the debt collector to make the debtor think that the IRS regulations always require the reporting of forgiveness of debt. The least sophisticated consumer would reasonably read the letter to mean that the creditor, in all circumstances, will report forgiveness of debt as is required by IRS regulations.[9]

52. In a recent decision, this court found in the case of Kaff v. Nationwide Credit, Inc., 1:13-cv-05413, No. 32 (E.D.N.Y. Mar. 31, 2015) (Towns, J,) that a statement regarding the requirement to file a 1099: "was not strictly true under all circumstances because **it failed to apprise debtors** that possible exceptions could apply to the creditor's mandatory reporting requirement, such as the exceptions **for interest and other non-principal debts**." Kaff v. Nationwide Credit, Inc., 1:13-cv-05413, No. 32 (E.D.N.Y. Mar. 31, 2015) (Towns, J,) (emphasis added); see also Good v. Nationwide Credit, Inc., No. 14-4295, 2014 BL 302150 (E.D. Pa. Oct. 24, 2014) (Finding that the statement "American Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt

---

[9] Russell v. Equifax A.R.S., 74 F.3d 30, 35, 1996 U.S. App. LEXIS 1042, *13 (2d Cir. N.Y. 1996) (That a notice's terminology is vague or uncertain will not prevent it from being held deceptive under 1692e.)

9

of $600 or more. Please consult your tax advisor concerning any tax questions" is not true and does not accurately reflect the relevant law the court also found that the statement's invocation of the IRS was deceptive and materially misleading in violation of the FDCPA.)

53. The Defendant tends to give erroneous and/or incomplete tax advice to consumers.

54. The FDCPA does not require that tax consequences be identified in collection letters sent to consumers; but where a debt collector has chosen to threaten the debtor with tax consequences, and has done so inaccurately, the false representation causes detrimental harm to the consumer since it concretely thwarts the consumer's ability to freely navigate a course of action in response to the collection notice. The risk in this type of harm is the detrimental impact to the consumer. And such harm is precisely the kind of infringement of the consumer's best interests that the FDCPA seeks to combat.

55. Such a statement in a collection letter suggests to the least sophisticated consumer that failure to pay will get the consumer into trouble with the IRS.[10]

56. The statement in the said letter is false and misleading, in violation of 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10).

57. Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

58. Plaintiff suffered actual harm by being the target of the Defendant's misleading debt collection communications.

59. Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

60. Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

---

[10] Kaff v. Nationwide Credit, Inc., 1:13-cv-05413, No. 32 (E.D.N.Y. Mar. 31, 2015) (Towns, J,); Wagner v. Client Services, Inc., No. 08-5546, 2009 WL 839073, 2009 U.S. Dist. LEXIS 26604 (E.D.Pa., March 26, 2009); Sledge v. Sands, 182 F.R.D. 255 (N.D.Ill. 1998).

61. Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

62. Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to the Defendant's collection efforts.

63. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendant's false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

64. These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

65. Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment.  Plaintiff and putative class members are entitled to preliminary and permanent injunctive relief, including, declaratory relief, and damages.

## CLASS ALLEGATIONS

66. This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

67. With respect to the Plaintiff's Class, this claim is brought on behalf of a class of; (a) all persons in the State of New York; (b) for whom GC Services Limited Partnership left a message; (c) that did not identify that the call was for collection purposes; (d) made in

11

connection with GC Services Limited Partnership's attempt to collect a debt; (e) which the said messages violate the FDCPA; (f) during a period beginning one year prior to the filing of this initial action and ending 21 days after the service of the initial complaint filed in this action.

68. The identities of all class members are readily ascertainable from the records of GC Services Limited Partnership and those business and governmental entities on whose behalf it attempts to collect debts.

69. Excluded from the Plaintiff's Class is the Defendant and all officers, members, partners, managers, directors, and employees of GC Services Limited Partnership, and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

70. There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether the Defendant's messages, such as the above said messages, violate 15 U.S.C. §§ 1692d, 1692d(6), 1692e(10), and 1692e(11).

71. The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

72. The Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

73. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a) **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

(b) **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members. The single issue of whether class members received phone messages that lacked information required by the FDCPA is common to the class members and predominates over any individual issue. The exact script of the messages need not be common to the class members, since it is the lack of information that is relevant.[11] The principal issues are whether the Defendant's messages, such as the above said messages violate 15 U.S.C. §§ 1692d, 1692d(6), 1692e(10), and 1692e(11).

(c) **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff's Class defined in this complaint have claims arising out of the Defendant's common uniform course of conduct complained of herein.

(d) **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

---

[11] Hicks v. Client Servs., Inc., 2008 WL 5479111, at *7 (S.D. Fla. Dec. 11, 2008).

13

   (e) **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendant who, on information and belief, collects debts throughout the United States of America.

74. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the said messages violate 15 U.S.C. §§ 1692d, 1692d(6), 1692e(10), and/or 1692e(11) is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

75. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

76. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## FIRST CAUSE OF ACTION

### *Violations of the Fair Debt Collection Practices Act brought by the Plaintiff*

77. Plaintiff repeats, reiterates, and incorporates the allegations contained in paragraphs numbered one (1) through seventy six (76) herein with the same force and effect is if the same were set forth at length herein.

78. This cause of action is brought on behalf of Plaintiff and the members of two classes.

79. The first class involves all individuals whom Defendant's records reflect resided in the State of New York who received telephonic messages from Defendant within one year prior to the date of the within complaint up to the date of the filing of the complaint; (a) the telephone call was placed to a the consumer's home or similar party seeking payment of a consumer debt by leaving a message for the Plaintiff; and (b) the Plaintiff asserts that the telephone message was in violation 15 U.S.C. §§ 1692d, 1692e, 1692e(10), 1692e(11), and 1692f.

80. The second class involves all individuals whom Defendant's records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff on or about June 15, 2016; and (a) the collection letter was sent to a consumer seeking payment of a personal debt; and (b) the collection letter was not returned by the postal service as undelivered; and (c) the Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) of the FDCPA for the use of any false representation or deceptive means to collect or attempt to collect any debt and for misrepresenting the amount of the debt owed by the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, respectfully requests that this Court enter a judgment in Plaintiff's favor as against the Defendant and award damages as follows:

      (a)      Statutory and actual damages provided under the FDCPA, 15 U.S.C. 1692(k);

      (b)      Attorney fees, litigation expenses and costs incurred in bringing this action;

      (c)      Any other relief that this Court deems appropriate under the circumstances.

Dated: Brooklyn, New York  
       January 31, 2017

                                                     /s/ Maxim Maximov  
                                            Maxim Maximov, Esq.  
                                            Attorneys for the Plaintiff  
                                            Maxim Maximov, LLP  
                                            1701 Avenue P  
                                            Brooklyn, New York 11229  
                                            Office: (718) 395-3459  
                                            Facsimile: (718) 408-9570  
                                            E-mail: m@maximovlaw.com

Plaintiff requests trial by jury on all issues so triable.

                                                     /s/ Maxim Maximov  
                                            Maxim Maximov, Esq.